## In re KORNSTEIN.

(District Court, E. D. Missouri, E. D.   November 11, 1920.)

1. **Aliens ☞68—Naturalization denial bars further application for five years.**

Denial of naturalization petition on the ground applicant was not a man of good moral character debarred his again seeking citizenship for at least five years thereafter.

2. **Aliens ☞68—Government may cross-examine naturalization candidate.**

The government may inquire into the entire life history of the candidate for naturalization, in determining his right to naturalization, through the cross-examination prescribed by Naturalization Act June 29, 1906, § 11 (Comp. St. § 4370).

3. **Aliens ☞71½, New, vol. 7 Key-No. Series—Naturalization revocable.**

Where an alien engaged in an immoral and illegal business procures naturalization, he will on proper proceedings be stripped of his citizenship on the ground that he fraudulently and illegally procured it.

4. **Aliens ☞62—Running disorderly hotel held to permanently bar naturalization.**

Where petitioner for naturalization had for years conducted a disorderly hotel, he would be permanently barred from citizenship by denying his naturalization application with prejudice.

5. **Aliens ☞68—Verifying witnesses of false naturalization application are permanently disqualified.**

Where affidavits of witnesses to naturalization application specifically recited that they possessed personal knowledge of the fact that the candidate was a man of good moral character, whereas in fact he ran an assignation house, such witnesses would be debarred from further appearance as naturalization witnesses in the court.

6. **Aliens ☞68—Incompetent witness vitiates naturalization application.**

A witness who is incompetent renders a naturalization application void.

7. **Aliens ☞68—Naturalization witnesses cannot be substituted.**

A competent naturalization witness cannot be substituted for an incompetent one.

In the matter of the petition of Boruch Kornstein for naturalization, wherein the government prayed that the petition be denied with prejudice, and that the verifying witnesses thereon be disqualified from further appearance in naturalization causes in the District Court. Prayer of the government granted.

M. R. Bevington, Chief Naturalization Examiner, of St. Louis, Mo., for the United States.

DYER, District Judge. On June 23, 1920, the applicant, Boruch Kornstein, an alien and native of Russia, giving his occupation as that of a hotel keeper, filed petition for naturalization No. 8904 in this court. As a part of his application, Kornstein identified himself as the identical person whose petition for naturalization No. 3368 was on September 11, 1914, denied on a finding that he was not a man of good moral character.

The government opposes the naturalization of this candidate, and prays that his petition be denied with prejudice, and that the verifying witnesses thereon be disqualified from further appearance in naturaliza-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion causes in this court. In support of its motion, the United States establishes that the adjudication of September 11, 1914, was based on testimony that the petitioner conducted a hotel, the principal patronage of which consisted of women of the underworld and their paramours. Testimony adduced on behalf of the government in connection with the present petition for naturalization of this candidate is to the effect that the character of the hotel he still conducts has not materially changed, and that the same is an assignation house with an established reputation of years' standing as such.

The first question presented is whether the proprietor or keeper of a hotel or lodging house, of the character the evidence shows the petitioner conducted, can be said to be a person of good moral character, attached to the principles of the Constitution, within the meaning of the naturalization act. From a review of the authorities, it appears that naturalization has been refused on the following grounds: Where the candidate has been guilty of perjury, In re Spenser, 5 Saw. 195, Fed. Cas. No. 13,234; where the liquor laws of a state are flouted, United States v. Hrasky, 240 Ill. 560, 88 N. E. 1031, 130 Am. St. Rep. 288, 16 Ann. Cas. 279, United States v. Gerstein, 284 Ill. 174, 119 N. E. 922, 1 A. L. R. 318, and In re Trum (D. C.) 199 Fed. 361; where false answers are given to a naturalization examiner during the preliminary examination of the candidate, In re Talarico, 197 Fed. 1019; and where the candidate habitually violated the election laws by voting, In re Centi (D. C.) 211 Fed. 559.

[1-4] It is quite clear the denial by this court of the candidate's petition for naturalization of September 11, 1914, on the ground that he was not a man of good moral character, debarred his again seeking citizenship for at least five years thereafter. In re Hartman (D. C.) 232 Fed. 798, and cases there cited. It is equally clear that the government may inquire into the entire life history of the candidate, in determining his right to naturalization through the cross-examination prescribed by section 11 of the Naturalization Act of June 29, 1906, 34 Stat. pt. 1, p. 596 (Comp. St. § 4370). United States v. Bressi (D. C.) 208 Fed. 372; In re Spenser, supra. It is therefore immaterial that more than five years have elapsed, following the adjudication of said September 11, 1914, before the candidate resubmitted his present case on petition No. 8904, which bears date of June 23, 1920. The test in any given naturalization case is whether the candidate is in law and in fact actually entitled to citizenship. Schurmann v. United States (C. C. A.) 264 Fed. 920, 921, and cases there cited. Where an alien engaged in an immoral and illegal business procures naturalization, he will on proper proceedings be stripped of his citizenship on the ground that he fraudulently and illegally procured the same. United States v. Raverat (D. C.) 222 Fed. 1018. The evidence in this case is to the effect that the petitioner has for years conducted a disorderly hotel. Can one who conducts such a place for business be considered a man of good moral character for naturalization purposes? The question must be answered in the negative. There are some offenses against morals that must be held to permanently bar an alien from citizenship. In re

Ross (C. C.) 188 Fed. 685; In re Spenser, supra. The maintenance of an assignation house must be held to fall within this rule. The government's prayer that the application of this candidate be denied with prejudice to his right to renew the same will therefore be granted.

[5-7] This leaves but one further matter for decision, that of the objection lodged against the verifying witnesses. The affidavits of said witnesses, which constitute a part of the petition for naturalization in this cause, specifically recite that they, the witnesses in question, possess personal knowledge of the fact the candidate is a man of good moral character. If they actually knew the true character of the candidate for whom they vouched, then their testimony could only have deceived the court, and as a result of this have brought about the naturalization of an unworthy candidate. On the other hand, if they did not know his true character, and despite this fact they declared on their oath that they possessed such knowledge, then their testimony was more than worthless, being contrary to the facts and such as to work an imposition on the court. In naturalization petitions, the courts are peculiarly at the mercy of the witnesses offered by the candidate. Such candidate takes care to see that only those who are friendly to him, and who he is satisfied will give testimony in his favor, are offered as witnesses. The courts cannot be expected to possess acquaintance with the candidates presenting themselves for naturalization—in fact, no duty rests upon them in this particular; so that witnesses appearing before them are in a way insurers of the character of the candidate concerned, and on their testimony the courts are of necessity compelled to rely. A witness who is incompetent renders an application void. United States v. Martorana, 171 Fed. 397, 96 C. C. A. 353. A competent witness cannot be substituted for an incompetent one. United States v. Gulliksen, 244 Fed. 727, 157 C. C. A. 175. The question of a witness' qualifications in naturalization proceedings is therefore a matter of more than usual importance. A witness who testifies to the good character of a candidate, in a case where such candidate is not in truth and in fact a man of good character, is not a credible witness, such as the law calls for. A petition verified by such an incredible witness will be denied.

The danger of permitting such witness to continue to act in naturalization causes is such that, at least until such time as opportunity presents for the appellate court for this circuit, or the Supreme Court of the United States, to declare the law on the subject, the witnesses in this case will be debarred from further appearance as naturalization witnesses in this court.