### In re BOOKSCHNIS.
### No. 21702.

District Court, D. Oregon.

May 17, 1945.

No appearances.

**JAMES ALGER FEE, District Judge.**

The petitioner filed for naturalization under the provisions of Section 310(b) of the Naturalization Act of 1940[1] on the 27th day of September, 1944, by virtue of the fact that he is married to an American citizen. The case was set for hearing in open court pursuant to the plan heretofore adopted whereby consideration is now given to each naturalization case upon its merits.[2] It appeared upon the examination that the petitioner came to the United States in 1911, and that he is married to a citizen of the United States.

When it developed upon the examination that the petitioner had been convicted of a crime in this court, a continuance was granted for a time in order that the facts could be properly outlined.[3] On the subsequent hearing, the record of the conviction was introduced. It was admitted by the petitioner that he was the defendant in that case. The record shows that he

---

[1] Act of October 14, 1940, c. 876, Title I, Subchap. III, § 310(b), 54 Stat. 1144, 8 U.S.C.A. § 710(b).

[2] United States v. Scheurer, D.C., 55 F. Supp. 243.

[3] In re Boric, D.C., 61 F.Supp. 133.

752

was found guilty of a violation of the Interstate Commerce Act on forty-two counts. The charge of each of these counts was that upon a certain occasion, while defendant was operating vehicles in interstate commerce, he paid rebates to the consignee of shipments of gasoline delivered by him. On May 15, 1941, defendant was sentenced to pay a fine of $50 on each of the first fifteen counts, $10 on each of the next sixteen counts and $5 on each of the next eleven counts. The fines on the first five counts were required to be paid immediately. The defendant was placed on probation for one year as to the other counts. Thereafter, on January 9, 1942, petitioner filed a petition in this court asking for naturalization. On July 16, 1942, on his motion, the court denied the petition.

The petitioner has a satisfactory knowledge of government and his record is otherwise clear. He had the burden of affirmatively establishing good moral character in order to obtain citizenship. The examiner recommended admission upon the ground that the petitioner was only required to establish good character for a period of three years prior to filing the petition, that ·being the period of required residence under this subjection of the Act,[4] and that since conviction had taken place prior to that time, citizenship could not be denied simply because petitioner was on probation during a part of the three years.

On the question of whether a person affirmatively establishes good moral character within a period where it is shown that he was on probation following a conviction, the authorities are in apparent conflict. Under the statute, under which the petitioner was sentenced, the court could have imposed a sentence of imprisonment for the term of one year. The finding of guilty based upon the plea was a conviction under the federal law.[5]

In re Ringnalda, D.C., 48 F.Supp. 975, holds that a petitioner for naturalization who within the three year period had been convicted of negligent homicide in the California State court, but placed on probation for one year without sentence during that period, was not prevented thereby from proving good moral charac-ter. This is based upon the fact that under the California law the whole proceedings are swept aside and there is no conviction because there is no final judgment. In this case the cause had been dismissed and thereby no conviction stood. The conclusion in this case is not binding in the proceedings here. As has been noticed above: (1) Conviction of a federal crime is accomplished even though there is no sentence imposed; and (2) in any event, where an act involving moral turpitude is committed within the statutory period, it would seem that the mere fact that no judgment of conviction had been based thereon would not militate against a finding that proof of good moral character during the time had not been furnished.

This position is clearly pointed out in an illuminating opinion by Judge St. Sure, In re Paoli, D.C., 49 F.Supp. 128, 131. There the court refused to follow the opinion just above cited. Although the court held this position, the petitioner was admitted because of the fact that the violation in that case was not "a vicious one or one which necessarily involved moral turpitude; it was purely a statutory crime." Therefore, the court found that good moral character was established· and admitted the applicant. In re McNeil, D.C., 14 F.Supp. 394, was another case in which Judge St. Sure dealt with a similar question. There the petitioner was indicted in February, 1927, paroled in 1929, and pardoned unconditionally on January 26, 1932. The petition for naturalization was· filed January 27, 1935. The court held that the petitioner could not be admitted upon a petition filed within five years after the termination of parole.[6] The mere fact that the sentence had been imposed before the time wherein petitioner is required to prove good moral character would not avail if during that time he is under probation following conviction.

The thesis of the examiner is unsound in another particular. The statute places the burden upon the petitioner to prove residence in this country for three years, but still requires proof of good moral character for five years. Judge Goodman says, in dealing with a similar provision:

"Congress clearly did not intend that

---

[4] 8 U.S.C.A. § 710(b) (2).

[5] There has been some doubt about this in the past, but it is now settled by the case of Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497.

[6] A similar holding was made by this court, without opinion In re Nestor Nezeritis.

the circumstance of marriage by an alien to an American citizen spouse should relieve a petitioner from substantial requirements of 'good behavior' prescribed for all other aliens." In re Laws, D.C., 59 F. Supp. 179, 180.

This brings us squarely to the proposition that if the conviction proved bad moral character, the petition must be denied. The violations are misdemeanors. The scope of regulation involving misdemeanors has covered practically every action of the individual within the years of war. Distinctions between acts involving moral turpitude and economic policy, and between acts recognized as criminal at all times and in all countries, and those which are simply violations of sumptuary, financial, or war regulations, should be maintained.

In this case, although there is necessity to maintain strict regulation of carrier lines, and although a curb of rebating should be rigidly maintained, there was no essential immorality involved in the actions of defendant. Since he possesses the other qualifications, the court directs that he be granted a certificate of admission after the administration of the oath in open court.

Petition is granted.