**Petition of SPERDUTI.**

No. 32468.

United States District Court
M. D. Pennsylvania.

Feb. 3, 1949.

Michael J. DeSisti, of Sayre, Pa., for petitioner.

George P. Halberstadt, of Philadelphia, Pa., for Government.

WATSON, Chief Judge.

This is a Petition for Naturalization by Anthony Sperduti filed under Section 311 of the Nationality Code, 8 U.S.C.A. § 711.

The facts are as follows: The petitioner is a native and citizen of Italy, who was lawfully admitted to the United States for permanent residence on December 23, 1908, and has resided continuously in the United States since that time. On February 22, 1923, petitioner was convicted in the Quarter Sessions Court, Bradford County, Pennsylvania, on an indictment charging murder and sentenced to death. On September 27, 1923, the death sentence was commuted to life imprisonment and he was committed to the Eastern State Penitentiary, Pennsylvania. On October 18, 1933, petitioner's sentence was commuted to ten years and one month, and petitioner was released from prison and placed on parole for life. On October 30, 1947, the Governor of the Commonwealth of Pennsylvania granted petitioner a full pardon. On January 28, 1948, petitioner filed this Petition for Naturalization, seeking admission as a citizen of the United States of America. Petitioner's spouse became a naturalized citizen of the United States on August 21, 1945, and petitioner resided in marital union with his United States citizen spouse for at least one year immediately preceding the filing of his Petition for Naturalization. Petitioner and his wife have five children, all daughters, who have been and still are persons of good moral character, and who stand high in their community. Since petitioner's release from prison in 1933, he has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

At the final hearing five outstanding citizens of petitioner's community, all having excellent reputations, who knew petitioner for periods varying from six to thirty-five

years, testified that his reputation for good moral character and Americanism was far above that of the average citizen. These character witnesses included such members of the petitioner's community as the superintendent of public schools, petitioner's employer, fellow workers of the petitioner, a business man, and a Catholic priest.

The Immigration and Naturalization Service objected to the admission of the petitioner to citizenship, for the reason that he had not established good moral character during the period immediately preceding the filing of the Petition on the 28th day of January, 1948, as required by the Nationality Code. The Immigration and Naturalization Service contends: (1) that a petitioner who has committed murder is precluded from establishing good moral character, even though the crime occurred outside the statutory period; (2) that, since petitioner was on parole during a substantial portion of the statutory period during which he is required to establish good moral character, he cannot establish such character; and (3) that, even though a full pardon has been granted, the statutory period of good moral character must be measured from the date of pardon.

Section 311 of the Nationality Code states: "A person * * * whose spouse is naturalized after the effective date of this section, if such person shall have resided in the United States in marital union with the United States citizen spouse for at least one year immediately preceding the filing of the petition for naturalization, may be naturalized after the effective date of this section upon compliance with all requirements of the naturalization laws with the following exceptions: * * * (b) The petitioner shall have resided continuously in the United States for at least two years immediately preceding the filing of the petition in lieu of the five-year period of residence within the United States * * *." 8 U.S.C.A. § 711. It is generally held that the petitioner must establish good moral character for the same period that he must establish residence. However, it is found as a fact in this case that petitioner did establish good moral character for over fourteen years prior to the filing of his Petition for Naturalization.

The fact that petitioner was convicted of murder almost twenty eight years before the filing of his Petition does not preclude him from establishing good moral character for the statutory period. See In re Balestrieri, D.C., N.D.Cal., 1945, 59 F.Supp. 181, where an alien convicted of first degree murder, and subsequently pardoned, was admitted to United States citizenship; Daddona v. United States, 2 Cir., 1948, 170 F.2d 964, 965, where an alien who pleaded guilty to the crime of manslaughter committed only several weeks before the beginning of the five year period was admitted to citizenship. The Court is aware of authorities to the contrary with which it cannot agree.

The fact that petitioner was on parole during part of the required statutory period does not preclude petitioner from establishing good moral character during that time. In Daddona v. United States, supra, the United States Court of Appeals, Second Judicial Circuit, in holding that good moral character of the petitioner might be shown even while petitioner was imprisoned, said, inter alia, "While it is true that the restraints of prison life circumscribe the prisoner's activities and render the opportunities to demonstrate good or bad moral character somewhat different from those existing in the community at large, nevertheless prison life is not free from temptations. * * * Good behavior during incarceration may be one indication of the fitness of the applicant to assume the duties of citizenship." This reasoning applies even more strongly to the present case where petitioner was not incarcerated during the statutory period but was on parole and later pardoned.

Again this Court is aware that there is authority to the contrary. In re McNeil, D.C., N.D.Cal. 1936, 14 F.Supp. 394. However this authority is not controlling here, and the reasoning in the very recent case of Daddona v. United States, supra, is in accord with the views of this Court.

Mr. Justice Stern, Pennsylvania Supreme Court, said, in Commonwealth ex rel. Banks v. Cain, 1942, 345 Pa. 581, 28 A.2d 897, 899, 143 A.L.R. 1473, in describing a pardon: "It completely frees the of-

fender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal disabilities resulting from his conviction. It blots out the very existence of his guilt so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense. Diehl v. Rodgers, 169 Pa. 316, 319, 32 A. 424, 425, 47 Am.St.Rep. 908," etc. The effect, if any, of the pardon in this case is to add weight to the view that petitioner is not precluded from establishing good moral character while on parole.

Good moral character for the prescribed period is a fact to be found from the circumstances in each case. While the fact that petitioner was on parole for a large part of the prescribed period should be taken into consideration, it is not decisive as a matter of law. And a petitioner may show good moral character notwithstanding that fact. There are to my knowledge persons who have served long terms in prison and then placed on parole, who have established themselves while on parole as leaders for good citizenship and American ideals in their communities and have raised children who possessed good moral character and were real Americans. Being in prison for the commission of a crime and being placed on parole should not bar a person from supporting whole heartedly American ideals and so living and behaving that he acquires good moral character. A person so handicapped and by the exercise of mental and moral courage acquires good moral character deserves more credit than the person who never had the temptations and suffered the disgrace of imprisonment and parole, and that may be an indication of his fitness to assume the duties of citizenship in the United States of America.

The facts here do not present a situation where petitioner should be precluded from establishing good moral character, and, as the petitioner for Naturalization, Anthony Sperduti, has established conclusively that he was and is a person of good moral character, as required by the Nationality Code, he should be admitted to citizenship.

Now, this Third day of February, 1949, it is Ordered and Decreed that petitioner, Anthony Sperduti, be admitted to citizenship upon taking the oath of allegiance to the United States of America as provided by law.